UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


OMEGA HEALTHCARE INVESTORS,  )
INC.,  )
          Plaintiff,  )
  )       1:99-cv-0862-RLY-WTL
     vs.  )
  )
RES-CARE HEALTH SERVICES, INC., et )
al.,
          Defendant.


**ENTRY ON OMEGA'S MOTION TO PROHIBIT RELITIGATION OF
RESOLVED ISSUES AND TO STRIKE WITNESSES AND EXHIBITS
DESIGNATED FOR THAT PURPOSE**

Before the court is Omega Healthcare Investors, Inc.'s ("Omega") Motion to

Prohibit Relitigation of Resolved Issues and to Strike Witnesses and Exhibits Designated

for that Purpose.  For the reasons set forth below, the court **DENIES** Omega's motion.

**I.**     **Background**

In 1989, Omega's predecessor in interest entered into a ten-year lease ("Lease")

with Robert E. Petrie for property referred to by the parties as Excepticon, located in

Lexington, Kentucky.  The subject of the Lease was an Intermediate Care Facility for the

Mentally Retarded ("ICF/MR").

Because Omega was a real estate investment trust, it was prohibited from

operating a medical facility.  Therefore, the Lease envisioned that Omega would rent the

facility to Petrie, and Petrie would acquire the licenses to run the facility.  The day-to-day

1

management duties were to be performed by a third-party – Res-Care. Thus, Petrie and Res-Care entered into a second contract, the Management Agreement.

In 1998, Res-Care purchased Petrie's rights and obligations under the Management Agreement and the Lease Agreement. Through that purchase, Res-Care became both the lessee and the day-to-day manager of Excepticon.

Between 1998 and 1999, Res-Care began working with the Commonwealth of Kentucky to move the residents of Excepticon into community-based housing. Because Kentucky was legally prohibited from paying Res-Care to manage the community-based care for the residents of Excepticon while Excepticon was still a licensed going-concern, Res-Care began the process of moving the residents of Excepticon into community-based care. By the time Omega regained possession of Excepticon from Res-Care, Excepticon "had no patients, no employees, and was no longer certified for use as an ICF/MR in Kentucky." *Omega Healthcare Investors, Inc. v. Res-Care, Inc.*, 475 F.3d 853, 856 (7th Cir. 2007).

On June 10, 1999, Omega filed suit. In Count V of the Third Amended Complaint, the only Count remaining for trial, Omega alleged that Res-Care breached both the Lease and the Management Agreement. The parties thereafter filed a number of motions for summary judgment. Relevant to this discussion are the parties' cross motions for summary judgment with respect to Count V. In addressing the parties' cross motions on December 4, 2003, the court found, based upon its prior ruling on Omega's Motion for Summary Judgment on Res-Care's Fourth Affirmative Defense, that there existed a

material issue of fact as to whether Res-Care could assert its public policy affirmative defense under *Olmstead v. L.C.*, 527 U.S. 581, 587 (1999). The court also found that Count V focused exclusively on the Management Agreement, and that the Management Agreement was null and void due to Res-Care's purchase of Petrie's rights and obligations thereunder. On that ground, the court granted summary judgment in favor of Res-Care.

On December 27, 2005, following the parties' settlement of Counts I-IV of Omega's Third Amended Complaint, the court entered judgment on Count V, making the court's December 2003 Entry final and appealable. On January 9, 2006, Omega filed its Notice of Appeal. In a written opinion issued on January 22, 2007, the Seventh Circuit reversed the judgment of the court with respect to Count V, finding that the Management Agreement was incorporated into the Lease Agreement, and that, as a matter of law, Res-Care breached paragraphs 23, 25, and 36 of the Lease Agreement. *See Res-Care*, 475 F.3d at 864.

Of relevance to the motion now before the court, with respect to paragraph 36 of the Lease which dealt with Res-Care's obligations upon the expiration of the Lease, the Seventh Circuit held:

> [P]aragraph 36 of the Lease . . . clearly required Res-Care to deliver the premises in such a condition as to be ready to continue operation as an ICF/MR . . . The facility that Res-Care surrendered was anything but capable of being used as [a Medicaid-funded ICF/MR]. We note that the undisputed facts above that put Res-Care in breach of the incorporated management terms apply equally here. The occupants were gone, the staff was gone, and the Commonwealth was pulling the plug on its certification.

. . . On the basis of these facts alone, Omega is entitled to summary
judgment on the issue of liability for breach of paragraph 36 of the Lease.

*Id*. at 862-63.  With respect to Res-Care's public policy affirmative defense, the Seventh

Circuit held:

Res-Care's reliance on the integration mandate, as expressed by *Olmstead*,
is misplaced.  Res-Care overlooks the fact that *Olmstead* requires only that
particular individuals be given the choice of community placement or
institutional care.  *Olmstead* specifically does not stand for the proposition
that ICF/MRs must be closed.

*Id*. at 862.  Significantly, the Seventh Circuit did not comment on the issue of damages,

leaving that issue for the court to decide on remand.  *See id.* at 864 ("Omega is entitled to

judgment as a matter of law [with respect to Res-Care's breach of paragraphs 23, 25, and

36 of the Lease], however, the question of adequate damages is not properly before this

court.").

## II.    Discussion

In the present motion, Omega moves the court to exclude the expert report and the

testimony of Res-Care's rebuttal expert, Michael P. Hedden, on grounds that his opinion

is based upon an erroneous interpretation of the Lease.  Omega also moves to strike

unspecified witnesses and exhibits identified in paragraph 21 of Res-Care's Final Witness

and Exhibit List.   Finally, Omega moves to preclude Res-Care from relitigating its public

policy affirmative defense.  The court now turns to the merits of those arguments below.

### A.    Mr. Hedden's Report and Testimony

Omega's expert with respect to damages is James Tellatin.  Mr. Tellatin opined

that Omega's lost fair market rent from August 2000 through August 2007 is $7,310,000. Mr. Tellatin's opinion with respect to Omega's fair market rental damages is "based on the assumption an ICF/MR operator would initiate a new lease for the subject 180-bed facility beginning August 1, 1999, at a fair market rent and at terms and conditions typical in the market." (Defendant's Ex. C).

Res-Care has employed Mr. Hedden to rebut Mr. Tellatin's testimony. Omega moves to strike Mr. Hedden's expert report and testimony because the opinions he expresses in his expert report are not based upon the Seventh Circuit's interpretation of the Lease. Rather, his opinions are based upon the court's Order on [Res-Care's] Motion in Limine to Exclude Evidence of Damages Incurred Under Count I[1] or Unjust Enrichment, dated September 12, 2005 (the "September 2005 Order"), which limited Omega's damages at trial to the fair rental value of the property. Because the court's September 2005 Order forms the basis of Mr. Hedden's expert report, a brief review of the reasoning employed in that order follows.

In the September 2005 Order, Res-Care moved to exclude Omega from introducing evidence at trial that Omega was entitled to recover the total damages for the loss of the entire ICF/MR operation, including the value of the intangible assets. Instead, Res-Care argued, Omega was only entitled to the fair rental value of the property. The court ruled in favor of Res-Care on grounds that Omega, as a real estate investment trust,

---

[1] In Count I of the Third Amended Complaint, Omega alleged that Res-Care breached its lease with Omega with respect to three ICF/MRs located in Indiana. The allegations with respect to Res-Care are nearly identical to those alleged in Count V.

was precluded from owning intangible assets such as a certificate of need. In reliance on the September 2005 Order, Mr. Hedden concludes in his expert report that "Omega is limited to the fair rental value of only real estate and improvements." (Defendant's Ex. A).

The Seventh Circuit's recent opinion, however, interpreted the Lease as requiring Res-Care to deliver, at the end of the Lease term, the premises "in such a condition as to be ready to continue operation[2] as an ICF/MR." *Res-Care*, 475 F.3d at 862. Thus, Omega's damages are not limited to the fair rental value of the property. Mr. Hedden's assumption that Omega's damages are limited to the fair rental value of the real estate is therefore incorrect. Rather than strike his expert report and testimony, however, the court will allow Mr. Hedden to revise his expert report in light of the Seventh Circuit's January 2007 opinion. Such opinion must be tendered to Omega on or before May 28, 2008.

### B.     Res-Care's Final Witness and Exhibit List and its Public Policy Defense

In paragraph 21 of Res-Care's Final Witness and Exhibit List, Res-Care includes a summary of the testimony proposed to be presented by Res-Care's witnesses:

> Res-Care may call as witnesses at trial any person with knowledge of Res-Care's operations and the downsizing process, the costs associated with closing Excepticon and helping the people served by Res-Care move into the community, Res-Care's operation of community-based services for the people formerly served at Excepticon, Omega's lack of ownership of any Certificates of Need or other intangible property right related to Excepticon,

---

[2] For example, the Court cited to paragraphs 36(f) of the Lease, which "required that the lessee must allow the lessor to use the lessee's Medicaid provider number for a short period after surrendering the premises until the lessor acquired its own provider numbers so that it could continue to bill Medicaid during the transition period." 475 F.3d at 862.

Omega's lack of damages, Omega's failure to mitigate its claimed damages, and the federal and Kentucky public policy and mandate supporting the actions of Res-Care and the Commonwealth.

In the following paragraph, Res-Care seeks "to call as witnesses at trial former residents of Excepticon." Omega contends that these unidentified witnesses and exhibits are not relevant to a determination of the lost rental income suffered by Omega as a result of Res-Care's failure to return the premises in a condition in which it could continue to be operated by a successor designee as a licensed and Medicaid-certified ICF/MR facility. Omega further asserts that the Seventh Circuit specifically rejected Res-Care's public policy affirmative defense that the Supreme Court's *Olmstead* decision required that it move the residents of Excepticon into community-based housing, and thus, it may not relitigate that issue in this court.

Res-Care responds that these subject matters are relevant to Omega's damages calculation because the integration mandate necessarily affects that calculation. Res-Care further contends that although the Seventh Circuit rejected Res-Care's public policy affirmative defense, that fact does not foreclose that evidence being introduced by Res-Care to rebut Omega's damages calculation. The court agrees with Res-Care. Whether the integration mandate is sufficient to override the provisions of the Lease is a separate question from whether the integration mandate precipitated a trend from institutionalized care to community-based care, thus affecting the fair rental rate of the property at issue. Accordingly, at this state of the litigation, the court declines Omega's invitation to strike Res-Care's testimony and exhibits related to these subject areas at this time. Omega may

reassert its opposition to these subject areas at trial, at which time the court will have an opportunity to read and hear the evidence at issue in its proper context.

## III. Conclusion

The court finds that Omega's Motion to Prohibit Relitigation of Resolved Issues and to Strike Witnesses and Exhibits Designated for that Purpose (Docket # 205) should be **DENIED**. Res-Care is **ORDERED** to submit a revised expert report of Mr. Hedden on or before May 28, 2008.

**SO ORDERED** this  6th   day of May 2008.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Michael E. Brown
KIGHTLINGER & GRAY
mbrown@k-glaw.com

James R. Craig
TACHAU MEEK PLC
jcraig@tachaulaw.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Brian F. Haara
TACHAU MEEK PLC
bhaara@tachaulaw.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

William C. Potter II
POTTER LAW GROUP
wc.potter@hotmail.com

David  Tachau
TACHAU MEEK PLC
dtachau@tachaulaw.com